UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>PAINTED DESERT COMMUNITY ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1466 JCM (NJK)<br><br>AMENDED ORDER |

Presently before the court is plaintiff Bank of New York Mellon's ("BNYM") motion for reconsideration. (ECF No. 50). Defendants Eva Berou and Ron Haus filed a response (ECF No. 52), to which BNYM replied (ECF No. 64).

Also before the court is Berou and Haus' motion to strike BNYM's jury demand. (ECF No. 49). BNYM filed a response (ECF No. 51), to which Berou and Haus replied (ECF No. 53).

**I.     Facts**

This case involves a dispute over real property located at 4820 Black Bear Road, Unit 203, Las Vegas, NV 89149 (the "property").

*a. Plaintiff's interest in the property*

On July 12, 2004 Maria M. Ryan ("borrower") purchased the property. (ECF No. 1). The borrower financed ownership of the property by way of a loan from Countrywide Home Loans, Inc. in the amount of $195,000.00 evidenced by a note and secured by a deed of trust recorded on July 20, 2004. *Id.*

On May 11, 2011, the deed of trust was assigned to BNYM. (ECF No. 34-2).

*b. Defendants' interest in the property*

On July 3, 2006, Nevada Association Services ("NAS"), acting on behalf of the Painted Desert Community Association ("Painted Desert"), recorded a notice of delinquent assessment lien, stating an amount due of $618.24. *Id.* On September 12, 2006, NAS recorded a notice of default and election to sell to satisfy delinquent assessment lien, stating an amount due of $1,983.84. *Id.*

On September 20, 2006, NAS recorded a second notice of default and election to sell to satisfy delinquent assessment lien, stating an amount due of $1,983.84. (ECF No. 1). On March 23, 2007, NAS recorded a notice of foreclosure sale, stating an amount due of $3,255.49. *Id.* On January 6, 2009, NAS recorded a second notice of foreclosure sale, stating an amount due of $5,262.49. *Id.* On December 22, 2009, NAS recorded a third notice of foreclosure sale, stating an amount due of $7,569.16. *Id.*

In an attempt to exercise its right of redemption, BNYM's predecessor in interest requested from NAS the superpriority amount of the lien. (ECF No. 34-2). On September 27, 2010, NAS provided a payoff ledger of the borrower's delinquent payment history from May 2006 to October 2010. (ECF No. 39-1). The payoff ledger shows an outstanding balance of $8,761.66 but does not state what portion of the balance constitutes the superpriority portion of the lien. *Id.* The ledger also does not include fees for maintenance and nuisance abatement. *Id.* The ledger does state, however, that Painted Desert's monthly assessments against the property were $91.25. *Id.*

BNYM's predecessor in interest used Painted Desert's ledger to calculate the superpriority amount as $821.25, the sum of nine months of common assessments. *Id.* On November 5, 2010, BNYM's predecessor in interest sent a letter and a check for that amount to Painted Desert. *Id.* The letter explained that the check was the sum of nine months of common assessments and intended to pay off the superpriority portion of the lien. *Id.* Painted Desert rejected the payment without explanation but did not commence a foreclosure sale pursuant to the third notice of foreclosure sale. *Id.*

On April 26, 2013, NAS recorded a fourth notice of trustee's sale, stating an amount due of $12,566.29 pursuant to the delinquent assessment lien that NAS recorded on July 3, 2006.[1] (ECF No. 1). On November 1, 2013, Painted Desert foreclosed on the property. (ECF No. 1). Berou and Haus purchased the property at the first and only foreclosure sale for $10,000. *Id.* A foreclosure deed in favor of Berou and Haus was recorded on November 12, 2013. *Id.*

   *c. Procedural background*

On May 22, 2017, BNYM filed the underlying complaint, alleging four causes of action: quiet title/declaratory relief against all defendants; breach of NRS 116.1113 against Painted Desert and NAS; wrongful foreclosure against Painted Desert and NAS; and injunctive relief against Berou and Haus. (ECF No. 1). On September 15, 2017, Berou and Haus filed counterclaims against BNYM for declaratory relief/quiet title and preliminary and permanent injunction. (ECF No. 29).

On July 23, 2018, the court issued an order denying BNYM's motion for summary judgment (ECF No. 34). (ECF No. 41). Now, the court reconsiders its prior order.

**II. Legal Standard**

A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see* Fed. R. Civ. P. 60(b).

Rule 59(e) "permits a district court to reconsider and amend a previous order," however "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations omitted). A motion for reconsideration is also an improper vehicle "to raise

---

[1] This is the same lien for which BNYM's predecessor sent a check in the amount of $821.25 to pay off the superpriority lien.

James C. Mahan
U.S. District Judge

- 3 -

arguments or present evidence for the first time when they could reasonably have been raised earlier in litigation." *Marlyn Nutraceuticals*, 571 F.3d at 880.

### III.   Discussion

BNYM argues that the court should set aside the foreclosure sale because its predecessor in interest tendered the superpriority portion of the lien. (ECF No. 50). In light of an intervening change in controlling law, the court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016).

In *Bank of America*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) ("*Bank of America*"). Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id*. at 118.

The Nevada Supreme Court's holding in *Bank of America* controls the court's analysis in this case. Like *Bank of America*, where Bank of America relied on the HOA's representations to calculate nine months of assessments, BNYM's predecessor in interest relied on Painted Desert's ledger to calculate nine months of assessments. *See id*. at 118; (ECF No. 39-1).

Further, Painted Desert, like the HOA in *Bank of America*, did not indicate that the property had any charges for maintenance or nuisance abatement. *See Bank of America*, 427 P.3d at 118;

(ECF No. 39-1). Thus, when BNYM's predecessor in interest sent a check for nine months of assessments to Painted Desert, it properly tendered the superpriority portion of the lien.[2]

Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See id*. at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust").

**IV.     Conclusion**

In light of the foregoing, BNYM has demonstrated that it is entitled to judgment as a matter of law. Because setting aside the foreclosure sale resolves all pertinent issues in this case, the court will deny as moot all remaining motions.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BNYM's motion for reconsideration (ECF No. 50) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the court's order filed in July 23, 2018, (ECF No. 41) be, and the same hereby is, VACATED.

IT IS FURTHER ORDERED that Berou and Haus' motion to strike BNYM's jury demand (ECF No. 49) be, and the same hereby is, DENIED as moot.

The clerk shall enter judgment accordingly and close the case.

DATED December 11, 2018.

_____
UNITED STATES DISTRICT JUDGE

---

[2] After BNYM's tender, NAS, on behalf of Painted Desert, recorded the fourth notice of foreclosure sale pursuant to the delinquent assessment lien that NAS recorded on July 3, 2006. (ECF No. 34-2). Painted Desert did not release the July 3, 2006, lien or record a second notice of default in support of the fourth notice of foreclosure sale. Therefore, the fourth notice of foreclosure sale did not create a second superpriority lien and did not require a second tender. *See Prop. Plus Invs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 401 P.3d 728, 731 (Nev. 2017).

**James C. Mahan**
**U.S. District Judge**

- 5 -